JEREMY J. THOMPSON
Nevada Bar No. 12503
**CLARK HILL PLLC**
3800 Howard Hughes Drive, Suite 500
Las Vegas, Nevada 89169
Telephone: (702) 862-8300
Facsimile: (702) 862-8400
E-mail: jthompson@clarkhill.com

and

DAVID A. OLSON (La. Bar No. 10202)
*(Pro Hac Vice motion forthcoming)*
KELSEY A. EAGAN (La. Bar No. 35764)
*(Pro Hac Vice motion forthcoming)*
**FRILOT LLC**
1100 Poydras Street, Suite 3800
New Orleans, LA 70163
Telephone: (504) 599-8000
Facsimile: (504) 599-8100
E-mail: dolson@frilot.com; keagan@frilot.com

*Attorneys for Defendants*
*RHEEM MANUFACTURING COMPANY and*
*RHEEM SALES COMPANY, INC.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| NICHOLAS GORMAN, an individual and citizen of Nevada;<br><br>Plaintiff,<br><br>vs.<br><br>RHEEM MANUFACTURING COMPANY, a Delaware corporation; RHEEM SALES COMPANY, INC., a Delaware corporation; MIDWEST CAN COMPANY, LLC, a Delaware limited liability company; SMITH'S FOOD & DRUG CENTERS, INC., an Ohio corporation; VEGAS INVESTMENT PROPERTIES REALTY GROUP LLC, a Nevada limited liability company; GLEN PLANTONE, an individual and citizen of Nevada; NEVADA SANDCASTLES, LLC, a Nevada limited liability company; DOES 1 through 60, inclusive; and ROE COMPANIES through 60, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**NOTICE OF REMOVAL BY RHEEM MANUFACTURING COMPANY AND RHEEM SALES COMPANY, INC.** |

ClarkHill\57715\413043\261081411.v1-10/19/20

Pursuant to 28 U.S.C. §§1332, 1441 and 1446, Defendants, Rheem Manufacturing Company and Rheem Sales Company, Inc., (sometimes hereinafter referred to as the "Removing Defendants") remove to this Court the following state court action:

## I. THIS CASE

1. This case arises from a house fire in Henderson, NV that occurred on February 28, 2020. Plaintiff claims to have been (and was) burned as a result.

2. On September 24, 2020, Plaintiff, Nicholas Gorman, filed his complaint in the Eighth Judicial District Court of Clark County, Nevada, styled *Nicholas Gorman, an individual and citizen of Nevada v. Rheem Manufacturing Company, a Delaware corporation, Rheem Sales Company, Inc., a Delaware corporation; Midwest Can Company, LLC, a Delaware limited liability company; Smith's Food & Drug Centers, Inc., an Ohio corporation; Vegas Investment Properties Realty Group, LLC, a Nevada limited liability company; Glenn Plantone, an individual and citizen of Nevada; Nevada Sandcastles, LLC, a Nevada limited liability company; Does 1 through 60, inclusive; and Roe Companies 1 through 60, inclusive* (hereinafter "Gorman v. Rheem, et al".) Asserted are:

    a. Product liability, negligence and punitive damages claims against the Removing Defendants;

    b. Product liability, negligence and punitive damages claims against Midwest Can Company, LLC (hereinafter occasionally referred to as "Midwest");

    c. Product liability, negligence and punitive damages claims against Smith's Food & Drug Centers, Inc. (hereinafter occasionally referred to as "Smith's");

    d. Negligence claims against Vegas Investment Properties Realty Group LLC (hereinafter occasionally referred to as "VIP"), Glenn Plantone (hereinafter occasionally referred to as "Plantone"), and Nevada Sandcastles, LLC (hereinafter occasionally referred to as

"Sandcastles"), (these Defendants are hereinafter occasionally referred to jointly as "The House Interests").

## II. PAPERS FROM REMOVED ACTION

3. Pursuant to 28 U.S.C. §1446(a), copies of all processes, pleadings, orders and other papers filed in the state court action are attached as composite Exhibit A.[1]

## III. THE REMOVAL IS TIMELY

4. Removal is timely because it is made within 30 days of each Removing Defendant receiving service of the Summons and Complaint. *See* U.S.C. §1446(b). Plaintiff filed this action in the aforementioned state court on September 24, 2020. Each Removing Defendant was served with the Complaint on September 25, 2020.[2]

## IV. THE VENUE REQUIREMENT IS MET

5. Venue of this removal is proper in this Court under 28 U.S.C. §1441(a) because the United States District Court for the District of Nevada includes the county in which the state court suit is now pending. *See* 28 U.S.C. §108.

## V. DIVERSITY OF CITIZENSHIP EXISTS BETWEEN THE PROPERLY JOINED PARTIES

6. This is a civil action that falls under the Court's original jurisdiction pursuant to 28 U.S.C. §1332 (diversity of citizenship) and is one that may be removed to this Court based on diversity of citizenship under 28 U.S.C. §§1441 and 1446.

7. Plaintiff is, and was at the time this action was filed, a citizen of the State of Nevada. *See* Complaint, Exhibit A1, at paragraph 2.

---

[1] The Complaint is more specifically identified as Exhibit A1.
[2] The Removing Defendants also formally accepted service of the Complaint, as provided for by Rule 4.1 of the Nevada Rules of Civil Procedure on September 29, 2020. Plaintiff and the Removing Defendants have agreed to use this date for purposes of calculating the date that responsive pleadings of the Removing Defendants are due.

- 3 -

8. Defendants Rheem Manufacturing Company and Rheem Sales Company, Inc. are, and were at the time this action was filed, corporations organized and existing under the laws of the State of Delaware, with their principal place of business in Georgia. *See* Complaint, Exhibit A1, at paragraphs 2 and 3. For purposes of determining diversity, a corporation (and a limited liability company) are deemed a citizen of both the state of its incorporation and the state where it has its principal place of business. *See* 28 U.S.C. §1332(c)(1).[3]

9. Upon information and belief, Defendant Midwest is, and was at the time this action was filed, a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located in Illinois. *See* Complaint, Exhibit A1, at paragraph 10.

10. Upon information and belief, Defendant Smith's is, and was at the time this action was filed, a corporation organized and existing under the laws of the State of Ohio with its principal place of business in Utah. *See* Complaint, Exhibit A1, at paragraph 13.

11. The citizenship of Defendants Does 1 through 60, inclusive, and Roe Companies 1 through 60, inclusive, must be disregarded because they are sued under fictitious names. *See* 28 U.S.C. §1441(b)(1), noting that in diversity analysis the citizenship of defendants sued under fictitious names "shall be disregarded".

12. Because Plaintiff is a citizen of Nevada and the only property joined Defendants, identified above, are not, complete diversity exists under 28 U.S.C. §1332.

### VI. THE CITIZENSHIP OF VIP, PLATONE AND SANDCASTLES MUST BE DISREGARDED BECAUSE THEY HAVE BEEN FRAUDULENTLY JOINED[4]

13. VIP, Plantone and Sandcastles are all citizens of the State of Nevada. *See* Complaint, Exhibit A1, at paragraphs 18, 19, and 21.

---

[3] This holds true for Defendants, Midwest and Smith's, as well.
[4] Fraud is a harsh word, but it the one adopted by courts for situations such as this.

- 4 -

14. VIP and Plantone have been sued for negligence, as alleged property managers of what is referred to in the Plaintiff's Complaint as "the Premises." *See* Complaint, Exhibit A1, at paragraph 20.

15. Sandcastles has been sued for negligence as alleged owner of the Premises. *See* Complaint, Exhibit A1, at paragraph 22.

16. As noted above, occasionally hereinafter these three Defendants are referred to as "The House Interests."

17. The allegations in Plaintiff's Complaint against The House Interests are that each had a duty to use the degree of ordinary care under the circumstances with regards to the condition of the Premises. *See* Complaint, Exhibit A1, at paragraph 140. More specifically:

   a. The obligation to perform reasonable inspections to ensure reasonable safety of the occupants. *See* Complaint, Exhibit A1, at paragraph 141;

   b. That each of the House Interests breached that duty by failing to perform reasonable inspections and reasonable maintenance at the Premises. *See* Complaint, Exhibit A1, at paragraph 142;

   c. Again, more specifically, that each of The House Interests <u>breached that duty by failing to remediate the dangerous presence of the Subject Water Heater</u> (the product designed, manufactured and sold by Defendant, Rheem Manufacturing Company.) (Emphasis added) *see* Complaint, Exhibit A1, at paragraph 144; and

   d. That each of The House Interests <u>knew, or should have known, of the danger the Subject Water Heater posed to occupants and visitors, including Plaintiff Gorman</u>. (Emphasis added) *see* Complaint, Exhibit A1, at paragraph 145.

18. The defect of the Subject Water Heater, alleged by the Plaintiff, is that its design and manufacture permitted gasoline vapors to enter the water heater and be ignited by the pilot light and/or burner components. *See* Complaint, Exhibit A1, at paragraph 53[5].

19. The Subject Water Heater was manufactured in late 2000. *See* Affidavit of Anthony Krell, Exhibit B, at paragraph 5.

20. Based on shelf-life data collected by the Answering Defendants, it almost certainly was installed in the Premises during the first half of 2001. *See* Affidavit of Anthony Krell, Exhibit B, at paragraph 6. Therefore, it had been in operation for nearly two decades by the time of the incident at issue.

21. The Subject Water Heater was fueled by natural gas. It had a standing pilot light in the combustion chamber at its bottom. When there was demand that water be heated, the standing pilot light ignited the burner. The burner extinguished when the desired temperature were achieved. *See* Affidavit of Anthony Krell, Exhibit B, at paragraph 7.

22. The combustion air needed to maintain the standing pilot light and ignited the burner entered the water heater by natural flow, primarily at its bottom. *See* Affidavit of Anthony Krell, Exhibit B, at paragraph 8.

23. Historically, it has been claimed in litigation and elsewhere that, if somehow gasoline vapors entered the ambient environment around such a water heater, they, with the surrounding air, could enter the combustion chamber and contact the pilot light and/or burner flames (if the latter was operating). *See* Affidavit of Anthony Krell, Exhibit B, at paragraph 9.

24. This, it has been claimed historically, could cause the gasoline vapors to ignite and a fire to flash outwards from the bottom of the water heater. *See* Affidavit of Anthony Krell, Exhibit

---

[5] Inadequate warnings claims, relating to this alleged defect, are also asserted.

B, at paragraph 10. That is generally what is alleged in this matter. *See* Complaint, Exhibit A1, at paragraph 54, and Affidavit of Anthony Krell, Exhibit B, at paragraph 9.

25. Over time, two primary approaches were developed and used in the attempt to reduce or eliminate such events. *See* Affidavit of Anthony Krell, Exhibit B, at paragraph 10.

26. These approaches to address the ignition of gasoline are embodied in two ordinances of the City of Henderson, Nevada. One key period of time is October 2013, when The House Interests assumed responsibility for the Premises, See Exhibit C, and when the Plaintiff leased it, See Exhibit D.

27. A second and more important period of time is February 2020, when the fire (and alleged torts by The Housing Interests) occurred.

28. On July 5, 2011, Henderson adopted the 2009 Uniform Plumbing Code, HMC 2887, effective through June 30, 2014. On February 4, 2019, it adopted the 2018 Uniform Plumbing Code, HMC 3508, effective through today.

29. Both versions contain identical language, stating at section 508.14(1) of the 2009 code and section 507.13 of the 2018 code:

"INSTALLATION IN RESIDENTIAL GARAGES

Appliances in residential garages and in adjacent spaces that open to the garage and are not part of the living space of the dwelling unit shall be installed so that all burners and burner ignition devices are located not less than 18 inches (457mm/450mm in the 2009 code) above the floor unless listed as flammable vapor ignition resistant."

30. On July 5, 2011, Henderson adopted the 2009 International Residential Code (One and Two Family Dwellings), HMC 3505, effective through June 30, 2014. On February 4, 2019, it adopted the 2018 International Residential Code (One and Two Family Dwellings), HME 3505, effective through today.

ClarkHill\57715\413043\261081411.v1-10/19/20

31. Both versions are similar. P.2801.6 in the 2009 code contains the first sentence below. The 2018 code has the second sentence, as well.

"WATER HEATERS INSTALLED IN GARAGES

Water heaters having an ignition source shall be elevated such that the source of ignition is not less than 18 inches (457mm) above the garage floor.

Exception: Elevation of the ignition source is not required for appliances that are listed as flammable vapor ignition resistant."

32. The Subject Water Heater was elevated 19 inches on the day of the fire and, given that it was on a "built into place" riser, almost certainly as of October 2013 as well, and, at the time of the first joint inspection of the house after the fire on May 29, 2020. *See* Exhibit E, Photograph of water heater elevation riser of 19 inches, taken by Dennis Shelp on May 29, 2020. Mr. Shelp is a fire origin and cause consultant retained by the Removing Parties in this matter.

33. Therefor the Subject Water Heater, as installed, complied with the codes/ordinances of the City of Henderson, Nevada:

   a. At the time the house was sold and, allegedly, became the responsibility of The House Interests in October, 2013;
   b. At the time the Plaintiff leased the Premises in October 2013;
   c. At the time of the incident made subject of this lawsuit, February 28, 2020; and
   d. As of today.[6]

34. The theory that promotes elevating water heaters to prevent or reduce the fires described above is that by so doing the ignition source therein will remain above the heavier than air gasoline vapors. *See* Affidavit of Anthony Krell, Exhibit B, at paragraph 11.

---

[6] While the ordinances of Henderson control here, it is noteworthy that at the time of the incident (and today) the State of Nevada had adopted the International Residential Code quoted above. "P2801.6 - Water Heaters Installed in Garages Water heaters having an ignition source shall be elevated such that the source of ignition is not less than 18 inches (457mm) above the garage floor. Exception: Elevation of the ignition source is not required for appliances that are listed as flammable vapor ignition resistant."

35. The design standard applicable to gas fueled water heaters is American National Standards Institute (ANSI) standard Z21.10.1.[7] The role of ANSI is very similar to that of Underwriters Laboratories (UL), regarding electrical devices. Many ANSI standards are performance tests. If a given gas appliance passes the test applicable to it, it is certified by the CSA as ANSI compliant and each unit can be sold with a sticker to this effect – like the UL sticker with electrical appliances. *See* Affidavit of Anthony Krell, Exhibit B, at paragraphs 12 and 13.

36. For decades, states and other governmental entities have had statutes, regulations and ordinances requiring installers to elevate gas fueled water heaters in certain locations, most often garages. Again, one purpose of so doing was to prevent or reduce occasions, when the pilot light or burner might ignite gasoline vapors. *See* Affidavit of Anthony Krell, Exhibit B, at paragraph 11.

37. Effective July 1, 2003, ANSI Z21.10.1 was revised to include a test that required thirty and forty-gallon capacity (such as the subject appliance), naturally aspirated gas fueled water heaters not ignite gasoline vapors <u>so as to allow</u> a fire to exit the appliance.[8] This was required for ANSI certification. These units became known as flammable vapor ignition resistant water heaters ("FVIR"). *See* Affidavit of Anthony Krell, Exhibit B, at paragraph 14.

38. After ANSI Z21.10.1 was revised, many governmental entities amended their water heater statutes, regulations, ordinances, etc. so that FVIR water heaters need not be elevated. *See* Affidavit of Anthony Krell, Exhibit B, at paragraph 15 and footnote 6, regarding the State of Nevada.

---

[7] Today ANSI is operated by the Canadian Standards Association or CSA. *See* Affidavit of Anthony Krell, Exhibit B, at paragraph 12.
[8] The fuels were (and are) natural gas and propane.

ClarkHill\57715\413043\261081411.v1-10/19/20

39. The House Interests complied with their duty, insofar as installation of the Subject Water Heater and prevention or reduction of ignition of gasoline vapors, by having a unit that was elevated 19 inches.

40. There was and is no legal duty for The House Interests to go beyond the elevation statutory requirement and, for example, have replaced the Subject Water Heater with an FVIR unit.

41. Any such legal duty, taken to its logical conclusion, would require Nevada landlords to remain constantly aware of safety improvements to all appliances, electrical systems, plumbing systems and gas systems, provided by them to tenants, and replace them (even where code/ordinance compliance had already been achieved, as is the case here.)

42. To impose such a legal duty on Nevada landlords would be new law expanding dramatically, perhaps to the point of impossibility, a landlord's duty to provide a reasonably safe residence.

43. Essentially, it would make landlords <u>insurers</u> of the safety of those on the rented property. This is contrary to Nevada law. "The owner or occupant of property is not the insurer of the safety of the premises, and in the absence of negligence, no liability lies." *Sprague v. Luck Stores Inc.,* 109 Nev. 247, 250, 849 P. 2d 320, 322 (1993).

44. The duty that does exist under Nevada law is that landlords are obligated to have knowledge (actual or constructive) of hazards and cure them assuming a reasonable opportunity to do so. *Id.*

45. Here for fault possibly to be found, The House Interests, by actual or constructive knowledge, would have to had possessed notice that The Subject Water Heater, although elevated 19 inches, might be defective due to a propensity to ignite randomly present gasoline vapors.

46. The House Interests had no such actual knowledge. *See* Affidavit of Randy Merrill, member manager of Sandcastles, Exhibit F, and Affidavit of Glenn Plantone, individually and member manager of VIP, Exhibit G.

47. Furthermore, constructive notice cannot be found as a matter of law. As previously stated herein, by codes/ordinances of The City of Henderson, Nevada, a water heater, <u>elevated 18 inches in a garage</u>, is acceptable, code compliant and thereby safe, when it comes to the ignition of gasoline vapors.

48. To find otherwise would be to conclude that the fact finders could determine whether The House Interests should have known that water heaters, elevated in accordance with what is clearly a safety code/ordinance, might be dangerous or defective.

49. Next the fact finders would have to address whether The House Interests were obligated to cure this situation, including by replacement of The Subject Unit with an FVIR water heater or by taking some other remedial measure. Should the fact finders answer in the affirmative, this would return the situation to one requiring The House Interests to be <u>insurers of the safety</u> of all, who visited the Premises. This is not how Nevada law works.

50. Consequently, <u>as matter of law</u>, The House Interests can have no liability here, which establishes that each has been fraudulently joined.[9]

**VII. THE AMOUNT IN CONTROVERSY REQUIREMENT FOR DIVERSITY JURISDICTION IS MET IN THIS CASE**

51. It is well-established among Ninth Circuit courts that, where the amount in controversy is not specifically stated in an *ad damnum* clause, a defendant need only show by a

---

[9] This does not mean that by Nevada statute or jurisprudence Plaintiff is prohibited from pursuing his claims against the Removing Defendants for product liability or based on other theories of fault. It simply means that he cannot properly join The House Interests in order to defeat diversity jurisdiction and litigate his dispute in state court and the consent of the Defendants.

- 11 -

preponderance of the evidence that the complaint alleges damages in excess of $75,000.00. *Singer v. State Farm Mut. Auto Ins. Co.,* 116 F. 3d 373, 375-76 (9th Cir. 1997). The defendant can meet this burden by showing that it is "facially apparent" from the complaint that the jurisdictional amount is in controversy. *Id.* at 377; *Williams v. Best Buy Co.,* 269 F. 3d 1316, 1319 (11th Cir. 2001) (holding that district court may consider whether jurisdictional amount is "facially apparent" from the complaint). A court may also consider the removal notice and post-removal evidence concerning the amount in controversy. *Williams,* 269 F. 3d at 1319; *see also Pretka v. Kolter City Plaza II, Inc.,* 608 F. 3d 696, 700 (9th Cir. 2007). For example, in this case a Medicaid lien in the amount of $157,137.78 has been filed. *See* Exhibit H.

52. "[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka,* 608 F. 3d at 754. A defendant merely needs to prove that it is more likely than not that the amount in controversy satisfies the jurisdictional amount. *Sanchez v. Monumental Life Ins. Co.,* 102 F. 3d 398 404 (9th Cir. 1996). This is because "[t]he law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life." *Id.*

53. Here, it is facially apparent that the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. §1332. The Complaint alleges:

> "45.   A fire started in the garage.
>
> 46.   The fire caused the Plaintiff to suffer severe burns.
>
> 47.   Plaintiff suffered catastrophic and permanent injuries, including third degree burns, which Plaintiff continues to suffer from this day and will continue to suffer in the future."

Additionally, in his Complaint and Prayer, Plaintiff seeks punitive damages in addition to those that are compensatory in nature.

## VIII. ALL SERVED DEFENDANTS CONSENT TO THIS REMOVAL

54. All Defendants have been served with the Complaint and through the counsel each consent to this removal.

   a. The written consent of Midwest Can Company, LLC, through counsel, is attached hereto as Exhibit I;

   b. The written consent of Smith's Food & Drug Centers, Inc., through counsel, is attached hereto as Exhibit J;

   c. The written consent of Vegas Investment Property Realty Group LLC, through counsel, is attached hereto as Exhibit K;

   d. The written consent of Glenn Plantone, through counsel, is attached hereto as Exhibit K; and

   e. The written consent of Nevada Sandcastles, LLC, through counsel, is attached hereto as Exhibit K.

## IX. FILING AND SERVING OF REMOVAL PAPERS

55. Pursuant to 28 U.S.C. §1446(d), written notice of the removal of this action has been or will be promptly served on all parties to this action.

. . .

. . .

. . .

. . .

. . .

. . .

- 13 -

56. Concurrent with the filing of this Notice of Removal, the Removing Parties have filed a Notice of Filing of Notice of Removal, with the Clerk of the Eighth Judicial District Court, Clark County, Nevada.[10]

Dated this ___19___ day of October, 2020.

                                          CLARK HILL PLLC

                                          By: _____
                                          Jeremy J. Thompson
                                          Nevada Bar No. 12503
                                          3800 Howard Hughes Pkwy, Suite 500
                                          Las Vegas, NV 89169
                                          Tel: (702) 862-8300
                                          Fax: (702) 862-8400
                                          Email: jthompson@clarkhill.com

                                          and

                                          David A. Olson (La. Bar No. 10202)
                                          *(Pro Hac Vice motion forthcoming)*
                                          Kelsey A. Eagan (La. Bar No. 35764)
                                          *(Pro Hac Vice motion forthcoming)*
                                          **FRILOT LLC**
                                          1100 Poydras Street, Suite 3800
                                          New Orleans, LA   70163
                                          Tel:  (504) 599-8000
                                          Fax:  (504) 599-8100
                                          Email:  dolson@frilot.com; keagan@frilot.com

                                          *Attorney for Defendants*
                                          *RHEEM MANUFACTURING COMPANY and*
                                          *RHEEM SALES COMPANY, INC.*

---

[10] The Notice of Filing of Notice of Removal is attached as Exhibit L.

ClarkHill\57715\413043\261081411.v1-10/19/20

# CERTIFICATE OF SERVICE

I hereby certify that on the ___19th___ day of October, 2020, I caused a true and correct copy of the foregoing NOTICE OF REMOVAL BY RHEEM MANUFACTURING COMPANY AND RHEEM SALES COMPANY, INC. was served as follows:

[ ] Pursuant to EDCR 8.05(a), EDCR 8.05(f), NRCP 5(b)(2)(D) and Administrative Order 14-2 captioned "In the Administrative Matter of Mandatory Electronic Service in the Eighth Judicial District Court, "by mandatory electronic service through the Eighth Judicial District Court's electronic filing system.

[ X ] by placing same to be deposited for mailing in the United States Mail, in a sealed envelope upon which first class postage was prepaid in Las Vegas, Nevada.

[ X ] by electronic mail via the following email addresses.

[ ] pursuant to EDCR 7.26, to be sent via facsimile, by duly executed consent for service by electronic means.

[ ] by hand delivery with signed Receipt of Copy.

[ ] by First Class, Certified U.S. Mail.

To the person(s) listed below at the address, email address, indicated below:

| | |
|---|---|
| PANISH SHEA & BOYLE LLP<br>RAHUL RAVIPUDI,, ESQ.<br>IAN SAMSON, ESQ.<br>ADAM ELLIS, ESQ.<br>8816 Spanish Ridge Avenue<br>Las Vegas, NV 89148<br>ravipudi@psblaw.com<br>samson@psblaw.com<br>ellis@psblaw.com<br>-and-<br>HENNESS & HAIGHT INJURY ATTORNEYS<br>MARK HENNESS, ESQ.<br>STEPHEN MENDENHALL, ESQ.<br>8972 Spanish Ridge Avenue<br>Las Vegas, NV 89148<br>mghesq@hennessandhaight.com<br>stephenm@hennessandhaight.com<br>*Attorneys for Plaintiff* | HALLE JAFFE & CLAYTON, LLP<br>STEVEN T. JAFFE, ESQ.<br>TAYLOR R. ANDERSON, ESQ.<br>7425 Peake Drive<br>Las Vegas, NV 89144<br>sjaffe@lawhjc.com<br>tanderson@lawhjc.com<br>*Attorneys for Defendants,*<br>NEVADA SANDCASTLES, LLC;<br>VEGAS INVESTMENT PROPERTIES REALTY GROUP, LLC;<br>GLEN PLANTONE |
| OFFICE OF THE ATTORNEY GENERAL<br>AARON D. FORD, ESQ.,<br>Attorney General<br>ANTHANASIA E. DALACAS, ESQ.,<br>Deputy Attorney General | |

- 15 -

| | |
|---|---|
| 555 E. Washington Ave., Ste. 3900<br>Las Vegas, NV 89101<br>adalacas@ag.nv.gov<br>*Attorneys for,*<br>STATE OF NEVADA, DEPT. OF HEALTH & HUMAN SERVICES, DIVISION OF HEALTH CARE FINANCING & POLICY - NEVADA MEDICAID | |

/s/ signature
An employee of CLARK HILL PLLC

- 16 -